**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| PASS & SEYMOUR INC.,<br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA; U.S. CUSTOMS AND BORDER PROTECTION; and RODNEY S. SCOTT, in his official capacity as Commissioner of U.S. Customs and Border Protection,<br><br>Defendants. | Court No. 1:26-cv-04868-N/A |

# FIRST AMENDED COMPLAINT

Plaintiff Pass & Seymour Inc., by and through its undersigned counsel, alleges as follows:

## NATURE OF THE ACTION

1. Plaintiff is a United States importer of record whose imported merchandise was subjected to tariffs imposed under the International Emergency Economic Powers Act, 50 U.S.C. § 1701 *et seq*. ("IEEPA"). As importer of record, Plaintiff is responsible for paying, and did pay, those duties upon entry of its goods.

2. Beginning in February 2025, through a series of executive orders, the President invoked IEEPA as authority to impose new and substantial tariffs (the "IEEPA tariffs") on goods imported from nearly every foreign country, including countries from which Plaintiff sources its merchandise.

3. The IEEPA tariffs are unlawful because IEEPA does not authorize the President to impose tariffs on imported merchandise. This Court, the U.S. Court of Appeals for the Federal Circuit, and the U.S. Supreme Court have each so held. *See V.O.S. Selections*, *Inc. v. United States*,

772 F. Supp. 3d 1350 (Ct. Int'l Trade), *aff'd*, 149 F.4th 1312 (Fed. Cir. 2025), *aff'd sub nom. Learning Resources*, *Inc. v. Trump*, 607 U.S. 229 (2026).

4. On February 20, 2026, the Supreme Court held that "IEEPA does not authorize the President to impose tariffs." *Learning Resources*, 607 U.S. at 255. The Court also confirmed that challenges to the IEEPA tariffs fall within the exclusive jurisdiction of this Court.

5. Those holdings do not guarantee Plaintiff a refund absent its own judgment and judicial relief. Plaintiff therefore seeks a declaration that the IEEPA tariffs are unlawful and void, an order directing liquidation and reliquidation of its entries without IEEPA duties, and a refund of all IEEPA tariffs it has paid, with interest as provided by law.

**THE PARTIES**

6. Plaintiff is a U.S. company and an importer, as defined in 19 C.F.R. § 101.1, of merchandise entered into the United States subject to the challenged duties. Plaintiff provides electrical and digital building infrastructure products for commercial, industrial, and residential markets. Plaintiff has made numerous entries of merchandise classified under various subheadings of the Harmonized Tariff Schedule of the United States ("HTSUS"), 19 U.S.C. § 3012, that are subject to the IEEPA tariffs. That merchandise includes switches, receptacles, GFCI outlets, and USB chargers.

7. Plaintiff imports merchandise from countries subject to the IEEPA tariffs challenged herein.

8. Defendant United States of America imposed and received the IEEPA tariffs at issue and is the statutory defendant under 5 U.S.C. § 702 and 28 U.S.C. § 1581(i)(1)(B).

9. Defendant U.S. Customs and Border Protection ("CBP") is a component agency of the U.S. Department of Homeland Security, headquartered in Washington, D.C. CBP is

responsible for border security and for administering, assessing, and collecting duties on merchandise imported into the United States, including the IEEPA tariffs.

10. Defendant Rodney S. Scott is the Commissioner of CBP and is sued in his official capacity.

11. Defendants are referred to collectively in this Complaint as "Defendants."

## JURISDICTION AND STANDING

12. This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1581(i), which confers exclusive jurisdiction over civil actions arising out of any law of the United States providing for tariffs, duties, or the administration and enforcement of such matters. The Supreme Court confirmed that challenges to the IEEPA tariffs fall within the exclusive jurisdiction of this Court. *Learning Resources*, 607 U.S. at 240 n.1.

13. This Court has the same powers in law and equity as, and as otherwise conferred by statute upon, a United States district court. 28 U.S.C. § 1585. In a civil action commenced under 28 U.S.C. § 1581, the Court may enter a money judgment against the United States and may order any other appropriate form of relief, including declaratory judgments, orders of reliquidation, injunctions, remands, and writs of mandamus and prohibition. 28 U.S.C. § 2643(a)(1), (c)(1).

14. Plaintiff has standing under 28 U.S.C. § 2631(i). Plaintiff is the importer of record for entries from countries subject to the IEEPA tariffs held unlawful by the Supreme Court. Plaintiff paid those tariffs pursuant to the executive orders identified below and suffered a resulting monetary injury. The requested relief would redress that injury.

## TIMELINESS

15. Actions brought in this Court under 28 U.S.C. § 1581(i) must be commenced "within two years after the cause of action first accrues." 28 U.S.C. § 2636(i).

16. This action is timely because it was commenced within two years of the executive orders implementing the IEEPA tariffs and of Plaintiff's payment of duties thereunder.

## FACTUAL BACKGROUND

### I. The President Imposed a Series of Tariffs Invoking IEEPA as His Authority

17. Beginning in February 2025, the President invoked IEEPA to issue a series of executive orders imposing or modifying tariffs on imported merchandise. This Complaint refers to those orders and their amendments collectively as the "Challenged Tariff Orders." They fall into three groups.

#### A. The Trafficking Tariff Orders

18. On February 1, 2025, the President issued three executive orders imposing tariffs on imports from Canada, Mexico, and the People's Republic of China. Each order declared a national emergency premised on the trafficking of fentanyl, opioids, and related substances, and each invoked IEEPA as the governing authority.

19. The order directed at Mexico, Executive Order 14194, 90 Fed. Reg. 9117 (Feb. 7, 2025), imposed an additional 25 percent tariff on goods of Mexico, premised on the threat posed by the influx of illegal aliens and illicit drugs across the southern border.

20. The order directed at Canada, Executive Order 14193, 90 Fed. Reg. 9113 (Feb. 7, 2025), imposed an additional 25 percent tariff on goods of Canada, premised on opioid trafficking across the northern border. The rate was later increased to 35 percent. Exec. Order No. 14325, 90 Fed. Reg. 37,957 (Aug. 6, 2025).

21. The order directed at China, Executive Order 14195, 90 Fed. Reg. 9121 (Feb. 7, 2025), imposed an additional 10 percent *ad valorem* tariff on products of China, premised on the sustained influx of synthetic opioids.

22. The President subsequently amended the China order through Executive Order 14200, 90 Fed. Reg. 9277 (Feb. 11, 2025), and Executive Order 14228, 90 Fed. Reg. 11,463 (Mar. 7, 2025), the latter of which raised the incremental tariff on imports from China to 20 percent.

**B. The Reciprocal Tariff Orders**

23. On April 2, 2025, citing large and persistent annual United States goods trade deficits as a separate national emergency, the President issued Executive Order 14257, 90 Fed. Reg. 15,041 (Apr. 7, 2025) (the "Reciprocal Tariff Order"). The order imposed a 10 percent baseline tariff on nearly all imports, effective April 5, 2025, and additional country-specific "reciprocal" tariffs on 57 countries, ranging from 11 percent to 50 percent, effective April 9, 2025.

24. On April 8, 2025, the President raised the reciprocal tariff rate on China from 34 percent to 84 percent. Exec. Order No. 14259, 90 Fed. Reg. 15,509 (Apr. 14, 2025).

25. On April 9, 2025, the President suspended the higher country-specific reciprocal tariffs for 90 days as to all countries except China, for which he raised the reciprocal tariff from 84 percent to 125 percent. Exec. Order No. 14266, 90 Fed. Reg. 15,625 (Apr. 15, 2025). With the 20 percent trafficking tariff remaining in place, most imports from China faced a minimum combined IEEPA tariff of 145 percent. The suspended country-specific reciprocal tariffs on other countries later took effect on August 7, 2025.

**C. The Country-Specific Tariff Orders**

26. On July 30, 2025, the President issued Executive Order 14323, 90 Fed. Reg. 37,739 (Aug. 5, 2025), imposing an additional 40 percent tariff on articles of Brazil, premised on asserted threats to the United States by the Government of Brazil.

27. On August 6, 2025, the President issued Executive Order 14329, 90 Fed. Reg. 38,701 (Aug. 11, 2025), imposing an additional 25 percent tariff on articles of India, premised on

India's direct or indirect importation of Russian Federation oil and the asserted threat posed by the Russian Federation.

28. The Challenged Tariff Orders, including all amendments and modifications thereto, cite as authority only IEEPA, 50 U.S.C. § 1701 *et seq.*, the National Emergencies Act, 50 U.S.C. § 1601 *et seq.*, section 604 of the Trade Act of 1974, 19 U.S.C. § 2483, and 3 U.S.C. § 301.

## II. Implementation of the IEEPA Tariffs

29. In 1988, Congress enacted the Omnibus Trade and Competitiveness Act, which adopted the Harmonized Tariff Schedule of the United States ("HTSUS"). Pub. L. No. 100-418, 102 Stat. 1107 (1988). The United States International Trade Commission publishes and maintains the HTSUS consistent with presidential orders. 19 U.S.C. §§ 1202, 3005, 3006; *see Michael Simon Design, Inc. v. United States*, 33 C.I.T. 1003, 1010 (2009) ("The authority to modify the HTSUS lies with the President.").

30. CBP classifies and appraises imported merchandise consistent with the HTSUS. 19 U.S.C. § 1202; 19 C.F.R. § 152.11. When goods enter the United States, CBP assesses and collects the duties owed based on the HTSUS classification and the rates in effect, including the IEEPA tariffs. 19 U.S.C. §§ 1500, 1502.

31. To implement the Challenged Tariff Orders, the President directed changes to the HTSUS, requiring that goods subject to the challenged tariffs be entered under newly established subheadings in Chapter 99 of the HTSUS.

## III. Liquidation of Plaintiff's Entries Is Not Protestable

32. Importers of record must deposit estimated duties, including IEEPA tariffs, at the time of entry. 19 U.S.C. § 1505(a).

33. "Liquidation" is "the final computation or ascertainment of duties." 19 C.F.R. § 159.1. CBP later finalizes the classification, appraisement, and duty amount and liquidates the

entry, notifying the importer of record. 19 U.S.C. §§ 1500, 1504(b). Liquidation ordinarily occurs within one year of entry, typically approximately 314 days after entry, unless extended for good cause. 19 U.S.C. § 1504(a), (b); 19 C.F.R. §§ 159.9, 159.12.

34. Once liquidation occurs, and if the liquidation is protestable, an importer of record has 180 days to file a protest. 19 U.S.C. § 1514. Not all liquidations are protestable, however. Where CBP acts in a ministerial capacity, without discretion, in imposing a duty, the liquidation cannot be protested. *See Rimco Inc. v. United States*, 98 F.4th 1046, 1053 (Fed. Cir. 2024). This Court has accordingly determined that liquidations are not protestable when the protest would turn on the legality of the duties assessed, and that an action under 28 U.S.C. § 1581(i) is the primary recourse for parties seeking refunds of duties held to be unlawful.

## IV. This Court, the Federal Circuit, and the Supreme Court Held That IEEPA Does Not Authorize Tariffs

35. IEEPA authorizes the President, upon declaration of a national emergency to address an "unusual and extraordinary threat," to "regulate . . . importation" of property in which a foreign country or national has an interest. 50 U.S.C. §§ 1701, 1702(a)(1)(B). No provision of IEEPA mentions tariffs, duties, or other revenue-raising measures.

36. On May 28, 2025, a three-judge panel of this Court granted summary judgment against the government and permanently enjoined enforcement of the IEEPA tariffs, holding that the President's assertion of tariff-making authority exceeded any authority delegated under IEEPA. *V.O.S. Selections, Inc. v. United States*, 772 F. Supp. 3d 1350, 1376 (Ct. Int'l Trade 2025).

37. Sitting *en banc*, the Federal Circuit affirmed on August 29, 2025, holding that "Congress, in enacting IEEPA, did not give the President wide-ranging authority to impose tariffs." *V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312, 1337 (Fed. Cir. 2025), *cert. granted*, No. 25-250, 2025 WL 2601020 (U.S. Sept. 9, 2025). In a separate action, the U.S. District Court for the District



ME1\63129776.v1

of Columbia likewise held that IEEPA does not authorize tariffs. *Learning Res., Inc. v. Trump*, 784 F. Supp. 3d 209 (D.D.C. 2025), *cert. granted before judgment*, No. 24-1287, 2025 WL 2601021 (U.S. Sept. 9, 2025).

38. On February 20, 2026, the Supreme Court affirmed, holding that "IEEPA does not authorize the President to impose tariffs." *Learning Resources*, 607 U.S. at 255. The Court reasoned that the power to "regulate . . . importation" does not embrace the power to impose tariffs, observing that the "facial breadth of 'regulate' places in stark relief what the term is not usually thought to include: taxation," and that the President "must point to clear congressional authorization to justify his extraordinary assertion of the power to impose tariffs," which he could not do.

39. On February 22, 2026, CBP announced that duties imposed under the Challenged Tariff Orders "will no longer be collected for goods entered for consumption or withdrawn from warehouse for consumption, on or after 12:00 a.m. eastern time on February 24, 2026." Cargo Systems Messaging Service Message No. 67834313 (Feb. 22, 2026).

## V. Defendants Have Represented That Refunds and Reliquidation Will Follow, and This Court Has Confirmed Its Authority to Order Them

40. In the litigation over the Challenged Tariff Orders, Defendants repeatedly represented that refunds would issue if the tariffs were held unlawful. Before the Federal Circuit, CBP confirmed that if tariffs imposed on plaintiffs during these appeals are ultimately held unlawful, then the government will issue refunds to plaintiffs, including any post judgment interest that accrues. Gov't Mot. Stay Pending Appeal at 25, *V.O.S. Selections, Inc. v. Trump*, No. 25-1812 (Fed. Cir. May 29, 2025).

41. Defendants also represented to this Court that they "will not object to the Court reliquidating any of plaintiffs" entries subject to IEEPA duties that are found to be unlawful."

*Princess Awesome, LLC v. U.S. Customs & Border Prot.*, No. 25-00078 (Ct. Int'l Trade May 23, 2025), ECF No. 16 at 12 n.4.

42. Consistent with those representations, this Court has confirmed its "explicit power to order reliquidation and refunds where the government has unlawfully exacted duties," and held Defendants estopped in this case and related cases from objecting to court-ordered reliquidation of customs entries subject to the IEEPA tariffs. *See AGS Co. Auto. Sols. v. U.S. Customs & Border Prot.*, 813 F. Supp. 3d 1298, 1300-02 (Ct. Int'l Trade 2025); *see also* Order, No. 25-00255 (Ct. Int'l Trade Jan. 14, 2026) (the government's stipulation regarding reliquidation "applies to all current and future similarly situated plaintiffs").

## VI. Plaintiff Paid IEEPA Tariffs and Has Not Been Fully Refunded

43. As of the date of this Complaint, Plaintiff has paid IEEPA tariffs imposed by the Challenged Tariff Orders on numerous entries. The goods subject to those tariffs entered the United States under the new Chapter 99 HTSUS subheadings established by the Challenged Tariff Orders.

44. Following *Learning Resources*, CBP established a functionality within its Automated Commercial Environment, the Consolidated Administration and Processing of Entries ("CAPE") system, to process certain IEEPA refund claims. CAPE has been rolled out in phases that exclude numerous categories of entries — including, among others, entries liquidated for more than 80 days before submission, entries flagged for reconciliation, entries subject to drawback claims, entries covered by antidumping or countervailing duty liquidation instructions, and entries covered by an open protest. CBP has stated that it does not intend to refund IEEPA duties on entries of non-plaintiffs that liquidated beyond the 80-day period, and that expanded functionality would be limited to plaintiffs with pending court cases for which the Court has ordered reliquidation.

45. Plaintiff has entries that are not presently eligible for refunds through CAPE, and the IEEPA duties paid on those entries remain unrefunded. Plaintiff also faces Reconciliation Entry (Type 09) filing deadlines as early as November 19, 2026. Despite termination of the Challenged Tariff Orders, CBP has continued to liquidate Plaintiff's entries with IEEPA duties assessed. Plaintiff seeks the prompt refund of all IEEPA duties it has paid.

## CLAIMS FOR RELIEF

## COUNT I

### THE CHALLENGED TARIFF ORDERS ARE UNLAWFUL FOR THE REASONS STATED IN *LEARNING RESOURCES*

46. Plaintiff incorporates by reference the preceding paragraphs.

47. In *Learning Resources*, the Supreme Court held that the President exceeded his authority under IEEPA, 50 U.S.C. § 1701 *et seq.*, when he imposed tariffs on imported goods. 607 U.S. at 251, 255. All tariffs imposed under IEEPA are therefore unlawful.

48. The Challenged Tariff Orders purport to impose duties and modify the HTSUS solely under IEEPA. Because IEEPA does not authorize the imposition of tariffs, the Challenged Tariff Orders are unlawful, *ultra vires*, and void *ab initio* as applied to Plaintiff.

49. Defendants have collected, and Plaintiff has paid, duties imposed pursuant to the Challenged Tariff Orders. Plaintiff is entitled to a refund of all IEEPA tariffs it paid, with interest as provided by law. 19 U.S.C. § 1505(b), (c).

## COUNT II

### THE HTSUS REVISIONS AND CHAPTER 99 CLASSIFICATION REQUIREMENTS ARE VOID

50. Plaintiff incorporates by reference the preceding paragraphs.

51. The Challenged Tariff Orders required revisions to the HTSUS establishing secondary Chapter 99 classifications and required Plaintiff to classify its merchandise under those

provisions. Further HTSUS modifications made through Federal Register notices likewise implemented the unlawful Challenged Tariff Orders.

52. Those revisions and requirements are therefore unlawful, void *ab initio*, and without effect as applied to Plaintiff.

## COUNT III

## DEFENDANTS ARE JUDICIALLY ESTOPPED FROM CONTESTING THE COURT'S AUTHORITY TO ORDER REFUNDS AND RELIQUIDATION

53. Plaintiff incorporates by reference the preceding paragraphs.

54. This Court has the explicit power to order reliquidation and refunds where the government has unlawfully exacted duties. *AGS Co. Auto. Sols.*, 813 F. Supp. 3d at 1302.

55. To obtain and to avoid judicial relief in the related litigation, Defendants represented that they would issue refunds of the IEEPA tariffs and would not oppose the Court's authority to order reliquidation of entries subject to the IEEPA tariffs. Having secured the benefit of those representations, Defendants are judicially estopped from now contesting this Court's authority to order refunds and reliquidation of Plaintiff's entries. *See Sumecht NA, Inc. v. United States, 923 F.3d 1340, 1348 (Fed. Cir. 2019).* This Court's estoppel ruling in AGS* applies to Plaintiff as a similarly situated party.

56. Due process independently requires that Defendants refund the IEEPA tariffs that Plaintiff paid and that Defendants unlawfully collected. *See McKesson Corp. v. Div. of Alcoholic Beverages & Tobacco*, 496 U.S. 18, 36-39 (1990). Plaintiff is entitled to a refund of the IEEPA tariffs it paid, with interest as provided by law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

a. Declare that the Challenged Tariff Orders are unlawful, *ultra vires*, and void *ab initio* as applied to Plaintiff;

b. Declare that the revisions to the HTSUS, and the requirement to classify merchandise under Chapter 99 of the HTSUS, made pursuant to the Challenged Tariff Orders are unlawful and void *ab initio* as applied to Plaintiff;

c. Declare that this Court's estoppel ruling in *AGS Co. Automotive Solutions v. U.S. Customs & Border Protection* applies in this case and estops Defendants from objecting to court-ordered reliquidation of Plaintiff's entries subject to the IEEPA tariffs;

d. Enjoin Defendants from continuing to liquidate Plaintiff's entries with IEEPA duties assessed;

e. Order CBP to reliquidate, without regard to IEEPA duties, any of Plaintiff's entries that have been liquidated with IEEPA duties, and to liquidate all unliquidated entries subject to IEEPA duties without those duties;

f. Order the United States to refund to Plaintiff all IEEPA tariffs collected from Plaintiff, with interest as provided by law, through reliquidation or liquidation as necessary, or, in the alternative, enter a money judgment against the United States equal to the value of those tariffs, plus interest;

g. Award Plaintiff its costs and reasonable attorneys' fees incurred in this action; and

h. Grant such other and further relief as this Court deems just and proper.

Dated: __November 3,2026___

Respectfully submitted,

/s/ _Zack Hadzismajlovic__________
Zack Hadzismajlovic
McCarter & English LLP
250 West 55th Street
New York, NY 10019
Telephone: 212-609-6843
Email: zh@mccarter.com

*Counsel for Plaintiff Pass & Seymour Inc.*